[Cite as *State v. Bilal*, 2026-Ohio-2974.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2025-10-120 |
| vs. | : | OPINION AND JUDGMENT ENTRY 8/3/2026 |
| LEVONTE JAMAAL BILAL, | : | |
| Appellant. | : | |
| | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2024-10-1502


Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Michele Temmel, for appellant.


**O P I N I O N**


**M. POWELL, J.**

{¶ 1} Levonte Jamaal Bilal appeals his sentence for rape. Finding no error, we affirm.

## I. Factual and Procedural Background

{¶ 2}    Bilal worked as a door-to-door salesman for CleanSky Energy. On July 1, 2024, around 5:30 or 6:00 p.m., he knocked on the door of an apartment in Fairfield where the victim lived. She had worked an overnight shift until noon that day and was asleep. She answered in a robe, believing that her apartment complex had sent him, and let him in. After he described the company's services, she signed an energy contract. The agreement required a recorded confirmation call, and as that call neared its end Bilal lowered his pants. When it concluded, the victim stood, backed away, and told him she was not interested. Bilal exposed himself and followed her into the kitchen, where he turned her to face away from him, placed her on her hands and knees on the floor, pulled down her underwear, and penetrated her vaginally. He ejaculated, pulled up his pants, and left.

{¶ 3}    The victim wiped up the ejaculate with a napkin and, after calling her boyfriend, went to the hospital, bringing the napkin, the robe she had worn, and a bottle Bilal had left behind. There she underwent a sexual assault examination. Testing of the swabs taken during that examination identified Bilal as a contributor to the recovered DNA, such that the estimated probability of a match with a random unrelated individual was rarer than one in a trillion.

{¶ 4}    Bilal was indicted in November 2024 on a single count of rape in violation of R.C. 2907.02(A)(2), a first-degree felony. Before trial, defense counsel obtained two forensic evaluations directed at a possible defense of not guilty by reason of insanity. Both examiners concluded that Bilal suffered from mental illness, with diagnoses that included attention-deficit/hyperactivity disorder, depression, and schizoaffective disorder, but that his conditions had not prevented him from appreciating the wrongfulness of his conduct. He did not qualify for the defense.

{¶ 5}   The case was tried to the court over two days in August 2025. Bilal testified. He described his diagnoses and his history of residential mental-health treatment, and he stated that he heard voices, that a voice had commanded him to assault the victim, and that he had stopped taking his medication. The trial court found him guilty of rape.

{¶ 6}   At the sentencing hearing on September 23, 2025, Bilal apologized and attributed the offense to having gone too long without his medication. The trial court stated that it had considered the principles and purposes of felony sentencing in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12, together with Bilal's record, the trial testimony, the psychological reports, and a presentence investigation. It noted his criminal history, which included attempted assault on a police officer, burglary, and attempted robbery, as well as the emotional and psychological harm the offense inflicted on the victim, and it found the protection of the public paramount. Acknowledging that Bilal had "some mental health issues" but also a serious criminal history, the court imposed a mandatory indefinite prison term with a minimum of 11 years and a maximum of 16.5 years, advised him of postrelease control, and notified him of his lifetime duty to register as a Tier III sex offender.

{¶ 7}   Bilal appealed.

## II. Analysis

{¶ 8}   Bilal raises a single assignment of error:

> THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT WHEN IT FAILED TO FOLLOW THE OVERRIDING PRINCIPLES OF FELONY SENTENCING UNDER R.C. 2929.11 AND FACTORS UNDER R.C. 2929.12 WHEN IT IMPOSED THE MAXIMUM SENTENCE FOR A FELONY OF THE FIRST DEGREE.

{¶ 9}   Bilal argues that the maximum sentence imposed by the trial court "was not reasonably calculated to achieve the overriding purposes of felony sentencing under R.C.

§2929.11 and failed to adequately take into account the seriousness and recidivism factors under R.C. §2929.12." He contends that the trial court gave too little weight to his mental illness and his remorse, and that the purposes of felony sentencing could have been achieved with something less than the maximum.

## A. Standard of Review

{¶ 10} We do not review felony sentences for an abuse of discretion. *State v. Marcum*, 2016-Ohio-1002, ¶ 10. Rather, R.C. 2953.08(G)(2) "specifically and comprehensively defines the parameters and standards" governing felony-sentencing appeals. *Marcum* at ¶ 21. And it supplies the standard we apply here. *State v. Napier*, 2022-Ohio-1439, ¶ 12 (12th Dist.). Under that statute, we may modify a sentence, or vacate it and remand for resentencing, only if we clearly and convincingly find that the record does not support the sentencing court's findings under certain enumerated statutes, none of which is at issue in this appeal, or that the sentence is "otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b). Clear and convincing evidence is that measure of proof that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

## B. The Scope of Review Under R.C. 2953.08(G)(2)

{¶ 11} Before applying the standard, we must resolve a threshold dispute about what that standard permits, because the parties proceed from different premises. Bilal's argument rests on *Marcum*, which stated that "an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence," *Marcum* at ¶ 23. On that reading, we would examine the record ourselves and decide whether the an 11-year minimum term is supported by it. The State counters that our

review is far narrower, asking only whether the trial court considered the relevant statutes and sentenced within the lawful range.

{¶ 12} The Ohio Supreme Court settled this question in *State v. Jones*, 2020-Ohio-6729. There, the Court held that the statements in paragraph 23 of *Marcum* "were made only in passing and were not essential to this court's legal holding. The statements are therefore dicta." *Jones* at ¶ 27. *Jones* then examined the text of R.C. 2953.08(G)(2) and found no room in it for the review Bilal requests. Division (G)(2)(a) permits review of the record only for findings made under R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I). "R.C. 2929.11 and 2929.12 are not among the statutory provisions listed." *Id.* at ¶ 28. Nor does division (G)(2)(b) work, because "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law.'" *Id.* at ¶ 32. The Court observed that the General Assembly amended R.C. 2953.08(G) in 2000 to eliminate the broad provision that once permitted review of whether "the record does not support the sentence." *Id.* at ¶ 38-39.

{¶ 13} As we have said, "'[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12.'" *Napier*, 2022-Ohio-1439, at ¶ 15 (12th Dist.), quoting *Jones* at ¶ 42. "The record must merely reflect that the trial court considered the relevant statutory factors set forth in R.C. 2929.11 and 2929.12 prior to issuing its decision." *State v. Murphy*, 2021-Ohio-4541, ¶ 26 (12th Dist.). Accordingly, a sentence is not clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11 and the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range. *Napier* at ¶

15; *State v. Tillett*, 2020-Ohio-3836, ¶ 10 (12th Dist.).

{¶ 14} Bilal's reliance on *State v. Foster*, 2006-Ohio-856, and *State v. Mathis*, 2006-Ohio-855, does not alter this framework. Those decisions confirm that trial courts must still consider R.C. 2929.11 and 2929.12, but they also make plain that trial courts "have full discretion to impose a prison sentence within the statutory range" and need not make findings or give reasons for imposing a maximum sentence. *Mathis* at paragraph three of the syllabus.

### C. Application

{¶ 15} With the governing standard fixed, the application is straightforward. Bilal was convicted of rape in violation of R.C. 2907.02(A)(2), a first-degree felony carrying a mandatory prison term. The court was required to impose an indefinite term with a stated minimum of 3 to 11 years, R.C. 2929.14(A)(1)(a), and a maximum equal to the minimum plus fifty percent of that term, R.C. 2929.144(B)(1). The trial court selected the 11-year minimum, yielding a maximum of 16.5 years. The sentence therefore falls squarely within, and at the upper limit of, the statutory range.

{¶ 16} The record likewise reflects the required statutory consideration. At the sentencing hearing, the trial court stated that it had considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. It also considered the record, the charge, the statements made at the hearing, the trial testimony, the psychological reports, and the presentence-investigative report. The court noted the emotional and psychological harm the offense inflicted on the victim, a factor the statute directs courts to weigh as indicating more serious conduct. R.C. 2929.12(B)(2). It recounted Bilal's criminal history, which included attempted assault on a police officer, burglary, and attempted robbery, a factor bearing on the likelihood of recidivism. R.C. 2929.12(D)(2). And it concluded that protecting the

public was paramount in this case, echoing the first overriding purpose of felony sentencing. R.C. 2929.11(A). Neither statute required the court to say more. There is "'no language contained in R.C. 2929.11 which require[s] the trial court to make any specific findings,'" and R.C. 2929.12 likewise demands no particular incantation. *Napier*, 2022-Ohio-1439, at ¶ 17 (12th Dist.), quoting *State v. Kane*, 2020-Ohio-5152, ¶ 11 (5th Dist.). The court here did considerably more than recite the statutes.

{¶ 17} Bilal's contrary arguments are, at bottom, requests that we reweigh the evidence. He emphasizes his schizoaffective disorder, his history of hospitalization, his testimony that he acted at the command of a voice, and his expressions of remorse, and he argues that lifetime Tier III registration already protects the public without a maximum term. These are legitimate mitigation arguments, and the place to make them was the sentencing hearing, where they were in fact made. The record shows the trial court heard them and weighed them. The court had before it two forensic evaluations, both of which recognized Bilal's mental illness while concluding that it did not meet the criteria for a defense, and the court expressly acknowledged at sentencing that Bilal has mental health issues. That the court balanced this mitigation against the seriousness of the offense and Bilal's criminal history, and found the latter weightier, is precisely the discretionary judgment that R.C. 2929.12(A) commits to the sentencing court. Our disagreement, if we had any, would supply no ground for relief, because we may not "independently weigh the evidence in the record and substitute [our] judgment for that of the trial court." *Jones*, 2020-Ohio-6729, at ¶ 42. The dispute in this case is not over whether the trial court considered mental illness. It is over how much that consideration should have counted, and that question is left in the sentencing court's discretion.

{¶ 18} Nor does Bilal identify any aspect of his sentence that is "otherwise contrary to law" within the meaning of R.C. 2953.08(G)(2)(b). He does not contend that the

sentence rests on an impermissible consideration such as race, ethnicity, gender, or religion, *see* R.C. 2929.11(C), or that the court failed to impose postrelease control properly, or that the term exceeds the statutory range. Because the trial court considered R.C. 2929.11 and 2929.12, properly advised Bilal regarding postrelease control, and imposed a sentence within the permissible statutory range, the sentence is not clearly and convincingly contrary to law. *Napier* at ¶ 15-16.

### III. Conclusion

{¶ 19} The sole assignment of error is overruled. The trial court's judgment is affirmed.

PIPER, P.J., and SIEBERT, J., concur.

_____
**J U D G M E N T   E N T R Y**

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Butler County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robin N. Piper, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*